

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

*Replaces O-285*

GERALD C. MANN
ATTORNEY GENERAL

March 7, 1939

Hon. Bert Ford, Administrator
Texas Liquor Control Board,
Austin, Texas

Dear Sir:

> Opinion No. O-286
> Re: Local option elections
> (1) May election be held
> in justice precinct to
> prohibit sale of beer con-
> taining alcohol in excess
> of four (4%) per cent by
> weight, when within pre-
> cinct there is a city which
> voted less than year ago to
> prohibit this type of beer?
> (2) Type of ballot to be
> used.

We are in receipt of your inquiry of February 23d in which you ask our opinion concerning the matters stated above.

The election provisions of our present Liquor Control Act are contained in sections 32 and 40 of Art. 666, Vernon's Annotated Penal Code, based on paragraph (c) of section 20, Art. 16 of the Constitution. The Constitutional provision sanctions local option elections in the following political sub-divisions of a county: (1) the entire county; (2) a justice's precinct; (3) an incorporated city or town.

Section 32 of the Liquor Control Act provides the Commissioners' Court of each county in the State upon its own motion may order an election for the whole county; but upon petition of ten per cent of the qualified voters of the county "or of any justice precinct, city or town "it shall order such election for such political subdivision. Provided, however, "after the first local option election held as provided in this Act, in any county, justice precinct, incorporated town or city, no subsequent election upon the same issue in the same political subdivision shall be held within one (1) year

from the date of the preceding local option election in said county, or said political subdivision of said county." (Underscoring our's).

The appellate courts have construed the local option election statutes to protect the "dry" status of the smaller entities of the whole. In other words, it is now well settled law that prohibition of liquor by a county does not supersede existing local option law of a justice precinct, and when a county abolishes such prohibition, the justice precinct remains "dry". This has been held true even where the state liquor control board has granted a permit, such permit being of no legal effect. See Powell vs. Smith (Civ. App.) 90 S.W. (2d) 942, citing many authorities, especially the Supreme Court cases of Walling v. King, 87 S.W. (2d) 1074 and Coker v. Kneicik, 87 S. W. (2d) 1076. We quote:

> "Where local option was adopted in any
> given locality, by the majority of the voters
> thereof, it will remain in force until the
> qualified voters of such particular sub-
> division decide otherwise in an election
> held for that purpose." (Powell vs. Smith,
> supra).

Where a county-wide election has been conducted and resulted in a majority vote against legalizing sale of liquor, a local option election in a justice's precinct at which a majority voted to legalize the sale of beer is void. Mayhew v. Garrett, 90 S. W. (2d) 1104, error refused. But the failure of an entire county to adopt prohibition does not prevent the holding of an election immediately thereafter in a precinct to determine whether local option should be adopted therein. Cofield vs. Britton, 109 S. W. 493; Griffin v. Tucker, 118 S.W. 635.

In the case of Griffin v. Tucker, supra, the Supreme Court held a larger subdivision might hold an election irrespective of the status of the smaller subdivisions therein. In that case local option had prevailed in a justice's precinct, but an election was subsequently called in a commissioner's precinct which embraced within its territorial limits the justice's precinct. The court said:

> "It is true that, when the prohibitery
> rule is put in force, it cannot be repealed
> or displaced except by the vote of the dis-
> trict which adopted it. It is quite as true

that an election, however resulting, in a
larger including subdivision has no such
effect. If it results in the defeat of prohi-
bition, the rule remains unaffected in the
territory that had before adopted it. If it
result in the adoption of prohibition, that
rule is extended to the whole, where before
it was in force only, in a part of the terri-
tory... We see nothing in the statute or the
Constitution by force of which the right of a
subdivision to have an election throughout its
extent may be taken away by the action of part
of its territory constituting a smaller one..."

In a local option "Stock Law" election, it was held
that the fact a Commissioner's precinct included a city which
had theretofore adopted the "Stock Law" did not render the
election void. Lambert v. Scurlock, 285 S. W. 679; Bishop v.
State, 167 S. W. 363.

Based upon the authorities cited, we are of opinion,
and you are accordingly advised, that a local option election
may be held in a justice precinct to determine whether to pro-
hibit or legalize the sale of beer containing in excess of
four per cent by weight, regardless of the fact there is with-
in the precinct a city which voted less than one year ago to
prohibit the sale of this type of beer. If the election re-
sults in a majority of the voters of the entire precinct favor-
ing the prohibition, the entire justice's precinct will be
"dry" insofar as that type of beverage is concerned; if a
majority vote favorable to sale of such alcoholic beverage,
the "dry" status of the city will remain as it now is, until
and unless another election be held within and for said city
changing its status. In such event that part of the justice's
precinct outside the limits of such city will be "wet" to the
extent that sales of beer not exceeding four per cent alcohol
by weight will be legal.



With reference to the form of ballot to be used, we
refer you to Article 666-40 of Vernon's Annotated Penal Code.

You state the county has already voted to legalize
3.2 beer. We presume this was done at a time when the legal
definition of the 3.2 beverage was "beer". That statutory
definition has since been repealed and the law now effect-
ive passed, which present statute defines beer to mean a
malt beverage which contains not more than four (4%) per cen-
tum alcohol by weight. We think the case of Akers v. Remington,
115 S. W. (2d) 714, authority to the effect another county elec-

tion would not be necessary for four (4%) per centum beer to be legal.

You do not state in your letter whether any election has ever been held within and for the justice's precinct as such. If such be the case, inasmuch as the sale of beer is legal in the county, the form of ballot to be used would be that prescribed by paragraph (1) of Article 666-40.

"'For prohibiting the sale of beer containing alcohol not exceeding four (4%) per centum by weight' and against prohibiting the sale of beer containing alcohol not exceeding four (4%) per centum by weight.'"

If said justice's precinct is an area wherein such type or classification of alcoholic beverage is now prohibited, the ballots should correspond to paragraph (a):

"'For legalizing the sale of beer that does not contain alcohol in excess of four (4%) per centum by weight' and 'against legalizing the sale of beer that does not contain alcohol in excess of four (4%) per centum by weight.'"

In other words, if the sale of beer is now legal as to said justice's precinct, the election should be to prohibit or not prohibit same. It would be improper to submit the issue of whether or not something would be legalized which they already have. See Akers v. Remington, supra, 115 S. W. (2d) 714 at p. 722. We quote:

"By the provisions of article 666-40, if the area in which a vote is to be taken is dry as to the particular class of liquor to be voted upon, the issue shall be submitted by a ticket reading 'For legalizing' and 'Against legalizing' the sale of the particular type or kind as to alcoholic content. But in areas that are wet, with respect to the type to be voted on, or, in other words, in areas like Young county, where they had previously voted for the sale of beer, that territory was 'wet' with respect to that type of liquor. Moyer v. Kelley, Tex.Civ.App., 93 S.W.(2d) 502, writ dismissed; Flowers v. Shearer, Tex.Civ.App., 107 S.W.2d 1049; Whitmire v. State, 130 Tex.Cr.R. 372, 94 S.W.2d 742."

Inasmuch as the election you mention is to be a precinct issue, that is, to determine the local option status of the entire precinct, we are of the opinion the same type of ballot should be used for each voter in the precinct, irrespective of whether he resides in the city. We construe the word "area", as used in the statute, to mean the entire precinct as a whole, and we do not believe the Legislature contemplated the use of different ballots where the result of the election could only change the status of one subdivision. The effect of such election cannot change the status of the city as to prohibition within its bounds, until there is a different distinct direct vote on the question of whether the city itself shall "legalize" the sale.

You are therefore advised it is our opinion there should be no distinction between the ballots to be used by those voters who reside within the city and those residing within the precinct but outside the city limits.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Benjamin Woodall
Benjamin Woodall
Assistant

BW-MR

APPROVED:

Gerald C. Mann
ATTORNEY GENERAL OF TEXAS